12-5008-cv
United States, ex rel. Dr. Jesse Polansky v. Pfizer, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: February 10, 2014      Decided: August 6, 2014)

Docket No. 12-5008-cv

_____

UNITED STATES OF AMERICA, EX REL. DR. JESSE POLANSKY,

*Plaintiff - Appellant,*

— v. —

Pfizer, Inc.,

*Defendant - Appellee.*

_____

B e f o r e:

JACOBS, LIVINGSTON, AND LYNCH, *Circuit Judges*.

_____

Plaintiff-appellant Jesse Polansky appeals from a dismissal of his claims

against defendant-appellee Pfizer for alleged violations of the federal False

Claims Act and state law equivalents. The district court (Brian M. Cogan, *Judge*) granted Pfizer's motion to dismiss Polansky's claims of fraud, and directed the Clerk of Court to "enter judgment in favor of defendant, dismissing the complaint." U.S. ex rel. Polansky v. Pfizer, Inc., 914 F. Supp. 2d 259, 266 (E.D.N.Y. 2012). But the court never explicitly ruled on Polansky's claims of retaliation for reporting the alleged fraud or sexual harassment in the workplace to superiors within Pfizer. Our jurisdiction to hear appeals is generally limited to "final decisions" of the district court. 28 U.S.C. § 1291. Because we cannot discern whether the district court meant to dismiss all of plaintiff's claims or only his fraud claims, we cannot deem the court's judgment to be a final one. The appeal is therefore DISMISSED.

————————————————

BRUCE J. TERRIS, Terris, Pravlik & Millian, LLP, Washington, DC (Todd A. Gluckman, Terris, Pravlik & Millian, LLP, Washington, DC; James M. Shaughnessy, Alastair Findeis, Milberg LLP, New York, NY; Lee F. Bantle, Bantle & Levy LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

MARK S. CHEFFO, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY (Hayden A. Coleman, *on the brief*), *for Defendant-Appellee*.

————————————————

2

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-appellant Jesse Polansky appeals a dismissal of his claims against defendant-appellee Pfizer, Inc. for alleged violations of the False Claims Act and state law equivalents. From 2001 to 2003, Polansky, a medical doctor, worked at Pfizer, and during his tenure he came to believe that Pfizer had violated various laws. He complained internally about the alleged violations and those complaints allegedly gave rise to escalating conflicts with his supervisors and to his eventual dismissal. Polansky filed this action shortly thereafter charging the company with two sets of related violations. The district court (Brian M. Cogan, *Judge*) entered judgment dismissing some or all of Polansky's claims. The question for us is whether we lack jurisdiction over Polansky's appeal from that judgment because we cannot discern how much of the complaint the district court intended to dismiss. We hold that we do and dismiss Polansky's appeal.

**BACKGROUND**

Polansky served as Pfizer's Director of Outcomes Management Strategies, and, in that capacity, he served on a committee that reviewed marketing strategies for certain drugs. One of those drugs was Lipitor – a statin that lowers

3

cholesterol levels by blocking enzymes that drive cholesterol production.

Polansky believed that Pfizer's marketing misled doctors into over-prescribing

Lipitor for off-label uses, and that those prescriptions, written based on allegedly

false assumptions, caused federal and state health programs to reimburse

patients for the cost of drugs they did not need. He repeatedly voiced these fears,

as well as concerns regarding sexual harassment in his department, to

supervisors. According to Polansky, his supervisors demanded that he remain

silent. He refused. Tensions mounted. He was fired.

Polansky then filed suit, accusing Pfizer of violating the law in two

different ways. The bulk of his complaint charged Pfizer with defrauding the

federal and state governments; his final amended complaint spent 114 pages

detailing the Medicare and Medicaid reimbursement system, the regulatory

structure governing Lipitor's use, and Pfizer's aggressive marketing of Lipitor to

patients for whom lifestyle changes would have been sufficient to lower their

cholesterol. Toward the end of his complaint, however, Polansky also claimed

that Pfizer fired him for reporting these violations to management and

supervisors; in fourteen pages, he described the alleged timing and frequency of

his internal protests regarding Lipitor's marketing, his effort to report sexual

harassment problems in his department, and the company's decision to fire him.

In all, Polansky charged Pfizer with eighteen counts of fraud and five counts of illegal retaliation.[1] Given that imbalance, it is not surprising that the parties and the district court spent more time unraveling the complicated and substantial fraud claims than on evaluating Pfizer's choice to fire Polansky.

Pfizer twice moved to dismiss the action. Its first motion attacked Polansky's Fourth Amended Complaint as failing to state a claim pursuant to the False Claims Act and insufficiently pleading fraud under Rule 9(b). The motion also argued that Polansky's internal complaints were not protected activity under the federal False Claims Act or New York State's whistleblower-protection statute because he asked Pfizer only to alter its marketing strategy, and never requested that the company return profits obtained after patients submitted "false claims" to government insurance programs. In a lengthy order, the district court (per Judge Edward R. Korman, to whom the case was then assigned)

_____

[1] The retaliation counts also divided into two groups of claims. In Counts II and XXIII, Polanksy alleged that he was fired in violation of the Federal False Claims Act and New York's whistleblower-protection statute after complaining about fraudulent marketing practices. In Counts XX, XXI, and XXII, Polansky alleged that he was fired in violation of Title VII and New York state and city equivalents after complaining about sexual harassment within his department.

5

granted Pfizer's motion in part, dismissing Polansky's false claims counts on grounds of failure to plead fraud with sufficient particularity, but granted him leave to replead. United States ex rel. Polansky v. Pfizer, Inc., 04-CV-0704 (ERK), 2009 WL 1456582, at *11 (E.D.N.Y. May 22, 2009) ("Polansky I"). In a separate two-page order, the district court declined to dismiss the two challenged retaliation claims, which related only to the allegation that Polansky was fired for reporting fraud. Polansky had also alleged that his employers fired him for bringing to light sexual harassment in his department, and the district court reasoned that no efficiency would be gained by dismissing the challenged claims because the facts surrounding Polansky's firing would have to be adjudicated regardless of the court's decision. District Court Docket #61. The court, however, noted that its decision was bounded by its view of the case "at this stage of the litigation," implying that it might revisit the motion in the future. Id.

After Polansky filed an amended complaint, Pfizer again moved to dismiss, challenging only the revamped fraud claims. Some time thereafter, the case was transferred to Judge Cogan, who may or may not have reviewed the prior decision regarding the retaliation claims. In any event, the district court granted Pfizer's motion. In an opinion that exclusively addressed the merits of

6

Polansky's allegations of marketing misrepresentations, the court concluded, as a matter of law, that Pfizer "ha[d] not engaged in off-label marketing of Lipitor according to plaintiff's allegations." United States ex rel. Polansky v. Pfizer, Inc., 914 F. Supp. 2d 259, 266 (E.D.N.Y. 2012) ("Polansky II"). But the court made no mention of Polansky's outstanding retaliation claims, and it remained unclear whether it intended to dismiss those counts, whether it overlooked those claims, or whether it intended to only dismiss the fraud claims. The court's concluding language deepened that ambiguity. In one sentence, it "granted" Pfizer's "motion to dismiss," which had not sought dismissal of the retaliation claims; in the following sentence, however, it directed "[t]he Clerk . . . to enter judgment in favor of defendant, dismissing the complaint," presumably in its entirety. Id.

## DISCUSSION

Our jurisdiction over this appeal is bounded by 28 U.S.C. § 1291, which empowers us to hear only "appeals from . . . final decisions" of the federal district courts. "[T]he statute . . . disallow[s] appeal from any decision which is tentative, informal or incomplete[, because an] [a]ppeal gives the upper court a power of review, not one of intervention." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). To test for finality, reviewing courts employ a "practical rather

7

than a technical" analysis.  Id.  Such a "pragmatic approach to the question of finality  [is] . . . essential to the achievement of the just, speedy, and inexpensive determination of every action."  Brown Shoe Co. v. United States, 370 U.S. 294, 306 (1962) (quotation marks omitted).  Thus, if a "matter remains open, unfinished or inconclusive, there may be no intrusion by appeal."  Cohen, 337 U.S. at 546.  In contrast, if the district court only overlooked a "ministerial dut[y]," any omission "is not fatal to finality and consequent appealability."  Taylor v. Bd. of Educ., 288 F.2d 600, 602 (2d Cir. 1961).

Here, the most plausible reading of the district court's order is that it committed a simple, understandable mistake by overlooking retaliation claims that were always ancillary to the central issues in this case.[2]  It directed that the complaint be formally dismissed, but the court's own prior order had held that the retaliation claims could go forward to discovery.  What remained to be done, then, was not a "ministerial duty"; the matter remained "open, unfinished, or inconclusive" with regards to all of the facts underlying Polansky's termination.

---

[2] Indeed, counsel in this case could have saved time and resources, both of their clients and the courts, had they simply brought the apparent oversight to the attention of the district court and requested clarification of the court's intended disposition of the retaliation claims.

8

Appellant relies on our decision in <u>Vona v. County of Niagara</u>, 119 F.3d 201 (2d Cir. 1997), to argue that we have jurisdiction to hear an appeal where a court enters a judgment even if the opinion supporting it failed to address a subset of claims. In <u>Vona</u>, we deemed a judgment final despite the fact that "the case was closed without any mention of [a plaintiff's state law] claim." <u>Id</u>. at 210. Plaintiffs Vona and Seaman sued the County of Niagara after they were fired from their jobs as government attorneys at the start of a new administration. Both plaintiffs contended that the allegedly politically motivated dismissals violated their constitutional rights, and Seaman also claimed that the county had ignored state civil service laws in firing him without cause. <u>Id</u>. at 203-04. Before the start of trial, the district court held that plaintiffs' positions were not protected from patronage dismissals, and thus, were not constitutionally protected. Left with only Seaman's lingering state law claim, the court directed the clerk to enter judgment on the federal claims under Federal Rule of Civil Procedure 54(b), which allows for entry of a partial final judgment where "an action presents more than one claim for relief." Rule 54(b) also requires that a district court "expressly determine[] that there is no just reason for delay," however, and the district court in <u>Vona</u> failed to do so.

9

Our court was thus faced with a conundrum: the district court had clearly understood that the case involved two sets of claims, only one of which had been finally disposed of – why else would the court have troubled to enter a Rule 54(b) certification?  But the court had also committed a technical mistake in certifying those claims for appeal.  In light of this error,  we looked to other indicia of the district court's intent regarding the orphaned state law claim.   At some point after the court entered its partial judgment, the "case was marked 'closed,' presumably on order of the district court."   Vona, 119 F.3d at 206.  That was enough to indicate that the court had likely reached some final disposition on both parts of the case, perhaps, we reasoned, "after deciding not to exercise supplemental jurisdiction over that claim." Id. at 209.  Given this plausible explanation of the court's apparently conclusive disposition, we deemed the judgment final, upheld the court's decision on the federal claims, and, out of an abundance of caution, remanded the state law claim for the court to "clarify its decision as to [its] status." Id. at 210.

Unlike in Vona, there is no ready, plausible explanation here for the district court's silence on the retaliation claims.  The last order addressing those claims left them standing.   The district court could not have believed that they fell with

10

the fraud claims, as three counts related to Polansky's complaints about sexual

harassment had no possible connection to the merits of his allegations of false

claims.  In contrast to <u>Vona</u>, there is reason to doubt whether the judge who

directed the entry of judgment understood that plaintiff had raised two sets of

claims, most devoted to allegations of fraud on federal and state governments,

but some claims related to his troubles at work: Because the case had been

transferred from another judge, Judge Cogan had never had occasion to review a

motion or briefing addressing Polansky's retaliation claims, and he worked from

Judge Korman's prior opinion dismissing only Polansky's fraud claims.  <u>See</u>

<u>Polansky II</u>, 914 F. Supp. 2d at 260 (noting that "[f]amiliarity with Judge

Korman's decision dismissing the Fourth Amended Complaint is assumed, and

[the court would] not repeat his thorough discussion of the background of

plaintiff's claim," but never referring to the separate unpublished two-page order

on the retaliation claims).

To be sure, the district court ordered that "the Clerk . . . enter judgment . . .

dismissing the complaint."  <u>Id</u>. at 266.  That formulation, however, cannot cloak

what is in practice a partial judgment.  As our sister circuits have noted, "the

label used to describe the judicial demand is not controlling, meaning we analyze

11

the substance of the district court's decision, not its label or form." C.H. ex rel.

Hardwick v. Heyward, 404 F. App'x 765, 767 (4th Cir. 2010) (quoting Dodge v.

Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003)). "[W]hen the record clearly

indicates that the district court failed to adjudicate the rights and liabilities of all

parties, the order is not and cannot be presumed to be final . . . ." Witherspoon v.

White, 111 F.3d 399, 402 (5th Cir. 1997).[3]

We therefore dismiss Polansky's appeal because the district court did not

enter a "final" judgment as required by 28 U.S.C. § 1291. In doing so, we are

mindful that the district court's apparent error was slight and easily correctable.

On remand, the district court could well decide that the fraud claims are

independent of the retaliation claims, and, if it sees no just reason for delay,

certify the dismissed claims for appeal under Rule 54(b). Alternatively, if we are

mistaken about the district court's intentions, and the court intended to dismiss

the retaliation claims as well, then it may clarify the reason for its dismissal, and

re-enter final judgment. In either of those scenarios, any further appeal should

---

[3] Nor is it dispositive that the Clerk of Court marked the case "closed." In Vona, we relied on that fact to support a plausible explanation for the entry of a final judgment. 119 F.3d at 206. In contrast, here, the clerk's routine termination of the case was likely the natural result of the district court's instruction to enter judgment.

return to this panel. Otherwise, the retaliation claims will proceed to final adjudication, and any subsequent appeal will be randomly assigned to a new panel in the normal course.

## CONCLUSION

For the foregoing reasons, Polansky's appeal is DISMISSED.